IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL HUBBARD,

        Plaintiff,                  No. CIV S-09-0939 JAM GGH P

    vs.

C.D. HOUGLAND, et al.,               FINDINGS & RECOMMENDATIONS

        Defendants.

_____/

Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants' November 10, 2009, motion to dismiss for failure to exhaust administrative remedies (Doc. 39).[1]  Plaintiff filed an opposition on December 7, 2009 (Doc. 40) and defendants filed a reply on February 2, 2010 (Doc. 50).

Background

        This case is currently proceeding on the second amended complaint (SAC) filed on September 23, 2009 (Doc. 30).[2]  Plaintiff alleges that in early March 2008, defendant Hougland grabbed plaintiff's pill bag from him and dropped the contents on the ground.  After

---

[1] Defendants filed an answer on October 15, 2009 (Doc. 34).

[2] On April 5, 2010, the undersigned ruled on plaintiff's many newly amended complaints and motions to amend (Doc. 63).

1  plaintiff picked up the papers that had been in the pill bag, defendant Hougland grabbed them

2  from him and dropped the papers that had been in the bag one by one on the ground.  After he

3  handed a few papers back to plaintiff, he said, "I'm done."  Plaintiff responded, "No you're not.

4  Pick them up."  A female officer picked up the papers and handed them to defendant Hougland.

5  He then shoved them at plaintiff and said, "I'm going to get your fat ass."  Plaintiff then

6  submitted two inmate grievances regarding the incident which received no response.

7         Plaintiff alleges that on July 7, 2008, defendant Hougland hit him on the back of

8  the head so hard that he lost consciousness. When plaintiff regained consciousness, defendant

9  Hougland was on top of him, hitting him on the head and telling him to stop resisting.  Defendant

10  McBride hit plaintiff on the back of the head.

11  Legal Standard

12         The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to

13  provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

14  1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

15  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

16  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

17  516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of

18  their confinement, whether they involve general circumstances or particular episodes, and

19  whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

20         Exhaustion of all "available" remedies is mandatory; those remedies need not

21  meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

22  Churner, 532 U.S. 731, 740, n. 5 (2001).  Even when the prisoner seeks relief not available in

23  grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

24  U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

25  process that could provide some sort of relief on the complaint stated, but no money."  Id. at

26  \\\\\

734.[3]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.

The PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

---

[3] That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

1  third level appeal to the Director of the CDCR.  <u>Barry v. Ratelle</u>, 985 F.Supp. 1235, 1237 (S.D.

2  Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of

3  review satisfies the exhaustion requirement under § 1997e(a).  <u>Id</u>. at 1237-38.

4            Failure to exhaust administrative remedies is an affirmative defense properly

5  raised by a defendant in an unenumerated Fed. R. Civ. P. Rule 12(b) motion.  <u>Jones v. Bock</u>, 549

6  U.S. 199, 216 (2007).  If the court concludes the prisoner has not exhausted non-judicial

7  remedies, the proper remedy is dismissal of the claim without prejudice.  <u>Wyatt v. Terhune</u>, 315

8  F.3d 1108, 1119-1120 (9th Cir. 2003).  Defendants bear the burden of raising and proving

9  non-exhaustion.  <u>Id</u>. at 1119.  The court may resolve any disputed material facts on the

10  exhaustion issue by looking beyond the pleadings in deciding a motion to dismiss for failure to

11  exhaust.  <u>Id</u>. at 1119-20.  No presumption of truthfulness attaches to a plaintiff's assertions

12  associated with the exhaustion requirement.  <u>See</u> <u>Ritza v. Int'l Longshoremen's and</u>

13  <u>Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988).

14  <u>Discussion</u>

15            In ruling on the instant motion the court is faced with a scarcity of evidence as the

16  pleadings from both parties are lacking.  Somewhat surprisingly, defendants' motion to dismiss

17  includes no exhibits and has instead relied on plaintiff's exhibits from the second amended

18  complaint.  Therefore, the court assumes that defendants believe that all of plaintiff's exhibits are

19  authentic or perhaps just the exhibits cited in defendants' motion to dismiss.

20            Defendants maintain that plaintiff filed one administrative appeal on August 23,

21  2009, concerning the July 7, 2008 incident.  Motion to Dismiss (MTD) at 2.  This administrative

22  appeal was denied as untimely.  SAC at 30-31.[4]  Plaintiff argues that he filed several inmate

23  appeals immediately following the July 7, 2008 incident, but these appeals were discarded by

24  prison officials and not logged.

25  ───────────────

26      [4] The court has referred to all page numbers as they appear on the court's electronic filing
system for plaintiff's second amended complaint.

4

Plaintiff's Claims

Plaintiff states that on or about July 13, 2008, he filed his first appeal concerning the incident. SAC at 6. Plaintiff contends that he filed the appeal in an institutional envelope and placed it in the prison mailing system. Id. Plaintiff received no response. Id. Plaintiff states that on September 7, 2008, he made a second attempt and filed another appeal in the mail but received no response. Id. On September 21, 2008, plaintiff submitted an inmate request concerning his complaints but received no response. Plaintiff states he filed two more appeals on November 2, 2008 and January 4, 2009, but still received no response. Id. at 7. Plaintiff has not included any copies of these appeals as exhibits in the complaint or opposition to the motion to dismiss.

On August 23, 2009, more than one year after the incident, plaintiff filed another inmate appeal that he has included as an exhibit. SAC at 27-29. This appeal generally describes the allegations against the defendants but there is no reference to any previous appeals plaintiff may have filed. Id. Plaintiff received two responses from prison officials, one on August 26, 2009, and the second on August 31, 2009. SAC at 30-31. The first response indicated that plaintiff's appeal was untimely and also stated that it was determined that plaintiff's grievance was not a staff complaint. SAC at 30. The second response just stated that it was a second notice telling plaintiff that he had not met the time constraints. SAC at 31.

While plaintiff has not included copies of any of the other appeals he allegedly filed, he has included correspondences received from the Office of Internal Affairs for CDCR on November 24, 2008, and December 29, 2008, that urged plaintiff to utilize the inmate appeals process. SAC at 11, 12. Plaintiff also received letters from the CDCR Inmate Appeals Branch on January 13, 2009, and other CDCR offices on February 11, 2009, and March 5, 2009. SAC at 13-16. While plaintiff has not included his letters to these offices, it is clear the subject matter of at least some of these letters was concerning improper handling of inmate appeals. However, based on the response from the Office of Internal Affairs, plaintiff did not send his first letter to

1   them until October 8, 2008, several months after the incident and well after time expired to file a

2   proper inmate grievance.  Id. at 11.

3               Defendants' Claims

4               In the motion to dismiss, defendants cite to plaintiff's exhibit that is a printout of

5   plaintiff's appeals filed from May 12, 2008, to November 6, 2008.  SAC at 14.  Defendants note

6   that plaintiff's nine appeals in this time period were screened out and none of the appeals were

7   classified as a staff complaint.  MTD at 5.  Unfortunately, there are no exact dates on when any

8   of these appeals were filed, nor does this address plaintiff's underlying argument that his appeals

9   were being discarded rather than logged.  In addition, defendants note that none of the appeals

10  are classified as staff complaints, however, the one appeal response before the court regarding

11  plaintiff's allegations, specifically states that plaintiff's claim has been determined not to be a

12  staff complaint.  SAC at 30.  Therefore, the lack of any staff complaints on the appeal printout is

13  not dispositive of the issue.

14              Conclusion

15              The court cannot know for certain if plaintiff did or did not attempt to timely file

16  an appeal of the incident and if staff at the institution were discarding his appeals as plaintiff

17  alleges.[5]  Both parties have spent a fair amount of time discussing if there is a pattern of this

18  behavior at the prison, as plaintiff has included declarations from other inmates alleging similar

19  problems and defendants have included records of those inmates' appeal histories to counter the

20  claims.  The appeal histories of these other inmates is not the issue before the court.

21              The instant motion concerns whether plaintiff exhausted his administrative

22  remedies.  Defendants bear the burden of showing that plaintiff failed to exhaust.  The court is

23  not overwhelmed with defendants' efforts.  In finding that defendants must prove the absence of

24  ───────────────

25          [5] The undersigned does not believe that an evidentiary hearing would be a valuable use of
    time as both parties have had ample time and opportunity to submit evidence.  Merely hearing
26  both sides reiterate their positions that have already been laid out in the instant motion would not
    be beneficial.

exhaustion, the Ninth Circuit noted in Wyatt v. Terhune that:

> [P]rison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners, especially, as is often the case, when prisoners have moved from one facility to another.  We agree with the Third Circuit, which has observed that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion."  (Citations omitted).

315 F.3d 1108, 1119 (9th Cir. 2003).

Plaintiff, at the least, has an argument that he took reasonable and appropriate steps to exhaust his claim and was precluded from exhausting, not through his own fault but based on outside actions of other prison officials.  See Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010).

Defendants have submitted no exhibits of their own related to plaintiff's claims.  The only declaration submitted by defendants is from the official who maintains that tracking system for inmate appeals, yet the entire substance of the declaration concerns other inmates who are not a party to the lawsuit or even remotely pertinent to the motion to dismiss.

However, the undersigned finds that defendants have just barely met their burden in demonstrating failure to exhaust.  While plaintiff seems to have copies of most pertinent documents to this case, he has not included copies of the most vital documents: the various grievance appeals he alleges that he filed and were discarded by defendants.  Moreover, the one grievance plaintiff has included that was filed August 23, 2009, more than a year after the incident, surprisingly makes no reference to the previous appeals he allegedly filed and were not logged.  The undersigned is troubled by this glaring omission if plaintiff was as concerned with discarded appeals as he claims.  Additionally, the printout listing plaintiff's appeals processed by the prison demonstrates that in the relevant time period plaintiff's appeals were being properly reviewed by defendants.  Plaintiff essentially argues that while many of his appeals were processed by the prison, certain appeals that he has no copies of, were the only appeals not processed by the prison and discarded.  All of these factors significantly detract from plaintiff's

1    credibility.

2              Thus, in reviewing the entire record and despite the deficiencies of defendants'

3    motion, the undersigned finds that the above deficiencies in plaintiff's case demonstrate that

4    plaintiff did not attempt to properly exhaust administrative remedies.  Therefore, defendants

5    motion to dismiss should be granted.

6              Accordingly, IT IS HEREBY RECOMMENDED that defendants motion to

7    dismiss, filed on November 10, 2009, (Doc. 39), be granted and this case dismissed.

8              These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within fourteen days after service of the objections.  The parties are

14   advised that failure to file objections within the specified time may waive the right to appeal the

15   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED:   06/11/2010

17                                        /s/ Gregory G. Hollows

18                                        _____
                                          UNITED STATES MAGISTRATE JUDGE

19   GGH: AB
     hub939.mtd2

20

21

22

23

24

25

26