IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL HUBBARD,

    Plaintiff,                        No. 2:09-cv-0939 JAM GGH P

    vs.

C.D. HOUGLAND, et al.,            FINDINGS & RECOMMENDATIONS

    Defendants.

_____/

I. Introduction

        Plaintiff, a state prisoner represented by counsel, proceeds with a civil rights action pursuant to 42 U.S.C. § 1983. This case involves an allegation of excessive force that occurred on July 7, 2008, by defendant guards Hougland and McBride. On September 22, 2010, defendants' motion to dismiss for failure to exhaust administrative remedies was granted and this case was closed. Plaintiff stated he had attempted to exhaust his administrative remedies but prison authorities were discarding his appeals and not logging them even though many of his other appeals were properly logged. However, the Ninth Circuit reversed and remanded the case and ordered an evidentiary hearing to be held to determine if plaintiff did submit an appeal on July 13, 2008. An evidentiary hearing was held before the undersigned on August 14, 2012. George Harris, Stacey Sprenkel and Robert Cortez Webb appeared for plaintiff and Christopher

Becker appeared for defendants.

II. Prior Court Order

In the original 2010 motion to dismiss, the undersigned found the following after analyzing the pleadings:

> In ruling on the instant motion the court is faced with a scarcity of evidence as the pleadings from both parties are lacking. Somewhat surprisingly, defendants' motion to dismiss includes no exhibits and has instead relied on plaintiff's exhibits from the second amended complaint. Therefore, the court assumes that defendants believe that all of plaintiff's exhibits are authentic or perhaps just the exhibits cited in defendants' motion to dismiss.
> Defendants maintain that plaintiff filed one administrative appeal on August 23, 2009, concerning the July 7, 2008 incident. Motion to Dismiss (MTD) at 2. This administrative appeal was denied as untimely. SAC at 30-31. Plaintiff argues that he filed several inmate appeals immediately following the July 7, 2008 incident, but these appeals were discarded by prison officials and not logged.
> 
> Plaintiff's Claims
> Plaintiff states that on or about July 13, 2008, he filed his first appeal concerning the incident. SAC at 6. Plaintiff contends that he filed the appeal in an institutional envelope and placed it in the prison mailing system. Id. Plaintiff received no response. Id. Plaintiff states that on September 7, 2008, he made a second attempt and filed another appeal in the mail but received no response. Id. On September 21, 2008, plaintiff submitted an inmate request concerning his complaints but received no response. Plaintiff states he filed two more appeals on November 2, 2008 and January 4, 2009, but still received no response. Id. at 7. Plaintiff has not included any copies of these appeals as exhibits in the complaint or opposition to the motion to dismiss.
> On August 23, 2009, more than one year after the incident, plaintiff filed another inmate appeal that he has included as an exhibit. SAC at 27-29. This appeal generally describes the allegations against the defendants but there is no reference to any previous appeals plaintiff may have filed. Id. Plaintiff received two responses from prison officials, one on August 26, 2009, and the second on August 31, 2009. SAC at 30-31. The first response indicated that plaintiff's appeal was untimely and also stated that it was determined that plaintiff's grievance was not a staff complaint. SAC at 30. The second response just stated that it was a second notice telling plaintiff that he had not met the time constraints. SAC at 31.
> While plaintiff has not included copies of any of the other appeals he allegedly filed, he has included correspondences received from the Office of Internal Affairs for CDCR on November 24, 2008, and December 29, 2008, that urged plaintiff to utilize the inmate appeals process. SAC at 11, 12. Plaintiff also received letters from the CDCR Inmate Appeals Branch on January 13, 2009, and other CDCR offices on February 11, 2009, and March 5, 2009. SAC at 13-16. While plaintiff has not included his letters to these offices, it is clear the subject matter of at least some of these letters was concerning improper handling of inmate appeals. However, based on the response from the Office of Internal Affairs, plaintiff did not send his first letter to them until October 8, 2008, several

months after the incident and well after time expired to file a proper inmate grievance. Id. at 11.

Defendants' Claims

In the motion to dismiss, defendants cite to plaintiff's exhibit that is a printout of plaintiff's appeals filed from May 12, 2008, to November 6, 2008. SAC at 14. Defendants note that plaintiff's nine appeals in this time period were screened out and none of the appeals were classified as a staff complaint. MTD at 5. Unfortunately, there are no exact dates on when any of these appeals were filed, nor does this address plaintiff's underlying argument that his appeals were being discarded rather than logged. In addition, defendants note that none of the appeals are classified as staff complaints, however, the one appeal response before the court regarding plaintiff's allegations, specifically states that plaintiff's claim has been determined not to be a staff complaint. SAC at 30. Therefore, the lack of any staff complaints on the appeal printout is not dispositive of the issue.

. . . .

Defendants have submitted no exhibits of their own related to plaintiff's claims. The only declaration submitted by defendants is from the official who maintains that tracking system for inmate appeals, yet the entire substance of the declaration concerns other inmates who are not a party to the lawsuit or even remotely pertinent to the motion to dismiss.

However, the undersigned finds that defendants have just barely met their burden in demonstrating failure to exhaust. While plaintiff seems to have copies of most pertinent documents to this case, he has not included copies of the most vital documents: the various grievance appeals he alleges that he filed and were discarded by defendants. Moreover, the one grievance plaintiff has included that was filed August 23, 2009, more than a year after the incident, surprisingly makes no reference to the previous appeals he allegedly filed and were not logged. The undersigned is troubled by this glaring omission if plaintiff was as concerned with discarded appeals as he claims. Additionally, the printout listing plaintiff's appeals processed by the prison demonstrates that in the relevant time period plaintiff's appeals were being properly reviewed by defendants. Plaintiff essentially argues that while many of his appeals were processed by the prison, certain appeals that he has no copies of, were the only appeals not processed by the prison and discarded. All of these factors significantly detract from plaintiff's credibility.

Thus, in reviewing the entire record and despite the deficiencies of defendants' motion, the undersigned finds that the above deficiencies in plaintiff's case demonstrate that plaintiff did not attempt to properly exhaust administrative remedies. Therefore, defendants motion to dismiss should be granted.

June 14, 2010, Findings & Recommendations at 4-8.

III.  Evidentiary Hearing

At the evidentiary hearing, plaintiff submitted many documents that were referenced in the original motion to dismiss but had not been included. After reviewing the evidence, the undersigned makes the following findings:

3

1    When a prisoner files an appeal, he submits a 602 form that he sends to the
2 appeals office in the prison. Reporter's Transcript (RT) at 8. An inmate has 15 working days
3 after an incident to file an appeal. RT at 9. The appeals office then decides to screen out the
4 appeal or accept it and respond to the inmate. RT at 9-10. The inmate has the option to further
5 appeal the decision if he is not content with the response by the appeals office. Id. At High
6 Desert State Prison (HDSP) there is an appeals database that tracks appeals brought by prisoners,
7 the Inmate Appeal Tracking System (IATS). RT at 10-11. The database tracks appeals that are
8 accepted for review and appeals that are screened out, however, they are memorialized in the
9 system differently. Plaintiff filed 17 appeals in 2008 and 2009 while housed at HDSP, that were
10 received and logged, but only three were accepted for review. RT at 17; Defendant's Exhibit A.
11 The appeals accepted for review have complete records retained by the prison, but none of these
12 appeals are relevant in the instant case. If an appeal is not accepted for review, the appeal
13 officers input a general synopsis of the allegations into the database and the reasons for rejection.
14 RT at 12, 26, 42-43. This "snapshot" is not part of the general record attached to each inmate's
15 appeal history, such as Defendant's Exhibit A, but can be viewed in the appeals system. The
16 screened out appeal itself is not retained. RT at 12.

17    Plaintiff contends that on July 13, 2008, he submitted an inmate appeal, though he
18 has no copy of the form, received no response from prison officials nor is there any record of this
19 appeal in the appeals database. On September 5, 2008, plaintiff told his doctor that he felt
20 helpless about the inmate appeals process. Plaintiff's Exhibit 38. Plaintiff states in September
21 2008, he submitted a second inmate appeal regarding the instant incident, though there is no copy
22 of that appeal. RT at 81-82. However, plaintiff made a handwritten copy of the appeal and
23 mailed it with a letter to the Lassen County District Attorney, apparently seeking that office to
24 prosecute the case. Plaintiff's Exhibit 28C; RT at 82. That appeal referenced the instant incident
25 and many other unrelated allegations against other prison officials not a party to this action. Id.
26 The Lassen County District Attorney's Office never responded to the letter, but apparently

forwarded it to prison officials, who responded to plaintiff on November 24, 2008, and told him to utilize the prison appeals system. Plaintiff's Exhibit 28A. Plaintiff submitted another letter to the Lassen County District Attorney on December 5, 2008, seeking to press charges. Plaintiff's Exhibit 29C. There was no response from the District Attorney's Office, but the letter was again sent to prison officials who advised plaintiff via letter on December 29, 2008, to use the inmate appeal system. Plaintiff's Exhibit 29A. Also in September 2008, plaintiff states he submitted a form to request an interview regarding the state of his appeals, but never received a response and does not have a copy of the form.

It is important to note that the HDSP appeals office received an appeal from plaintiff on October 3, 2008. RT at 25. It seems likely this was the September 2008, appeal plaintiff filed. The snapshot of the October 3, 2008, appeal reveals that plaintiff sought $1,500 and a sweatshirt for agony, emotional distress and headache. RT at 27. It also mentioned Hougland and McBride the defendants in the instant case. Id.[1] There is also a snapshot of an October 10, 2008, appeal that was logged, but that appeal was screened out and not processed to the next level and there is no mention of any staff member involved. RT at 40.

In November 2008, plaintiff wrote a letter to the chief of inmate appeals. Plaintiff's Exhibit 30. Plaintiff stated that the appeals coordinators were not playing fair and they either do not respond, screen out appeals or hold onto them for two weeks and then state the appeal was late. Id. Plaintiff stated he was in Administrative Segregation for 126 days and a disciplinary hearing was not impartial. Id. There was no specific reference to the appeal in this case not being processed. The chief of inmate appeals responded on January 13, 2009, and encouraged plaintiff to use the appeals system and also noted that the appeals record only reflected two appeals filed by plaintiff at HDSP where the underlying conduct of the instant case

---

[1] Though, it is questionable if this snapshot reflects the copy of the appeal that plaintiff sent to the Lassen County District Attorney's Office. If the appeal received on October 3, 2008, is not the appeal plaintiff filed in September, it is not clear to what appeal plaintiff filed that this would correspond.

1  occurred. Plaintiff's Exhibit 31.[2]

2  Plaintiff states that approximately 40 days after submitting his second appeal, he
3  submitted a third appeal. RT at 87. The second appeal appears to have been submitted at some
4  date in September 2008, and the appeals office received an appeal on October 3, 2008. Plaintiff
5  does not have exact dates but it would seem that he filed the third appeal at some point in
6  November 2008. Plaintiff does not have a copy of the appeal. The appeals office received an
7  appeal on November 26, 2008,[3] that was logged and involved Hougland and McBride, though
8  there is no mention of the allegations in the snapshot. RT at 27. This appeal was not processed
9  to the next level. Id.

10  On January 30, 2009, plaintiff wrote a letter to Internal Affairs regarding problems
11  with the appeals system. While plaintiff does not have a copy of this letter, Internal Affairs
12  responded on February 11, 2009, that plaintiff should utilize the appeals process at his institution.
13  Plaintiff's Exhibit 32. Also in January 2009, plaintiff wrote to the Office of Inspector General
14  (OIG) regarding the handling of inmate appeals. Plaintiff's Exhibit 34. In the letter, plaintiff
15  states he filed four separate appeals regarding the instant incident, but has not received any
16  response. Id. Plaintiff stated he filed the appeals on July 13, August 31, October 19 and
17  December 7. Id. It also appears that on September 17 and September 18, 2008, plaintiff sent
18  copies to the OIG of two other inmate appeals, not related to this case. Id. The OIG responded
19  on March 5, 2009, that a limited inquiry demonstrated no intervention was required. Plaintiff's
20  Exhibit 33.

21  Plaintiff testified that he filed a fourth appeal approximately 40 days after the third
22  appeal. RT at 90. As the undersigned estimated that the third appeal was filed in mid or perhaps
23  late November 2008, this fourth appeal was perhaps filed in December 2008, or January 2009. In

---

[2] This corresponds with the two appeals regarding this incident that were received and logged by the appeals office but were screened out.

[3] This appeal is also described in the transcript as the November 24, 2008, appeal.

his complaint, plaintiff states he filed a fourth appeal on January 4, 2009.  Doc. 30 at 7.  Though in his January 30, 2009, letter to the OIG, plaintiff stated the fourth appeal was filed on December 7, 2008.  Plaintiff's Exhibit 34 at 449.  Regardless, there is no record of this appeal in the appeal database nor is there a copy.

Plaintiff filed the instant federal case in April 2009.  On August 23, 2009, plaintiff filed another inmate appeal regarding this incident, but that was screened out as time barred.  Plaintiff's Exhibit 16, at 303-307.  There is a record of this appeal.  Id.  Plaintiff states that a cover page was attached to the appeal that discussed his prior attempts to exhaust, but there is no copy of that cover page.

In July 2008, plaintiff was in Administrative Segregation and mailed his appeal by putting it in a inter-departmental envelope and put it through the tray slot in his door, and left it for a correctional officer to pick up.  RT at 106-107.  Plaintiff observed the correctional officer take the mail, but he does not remember the officers's name.  RT at 107.  If the person who picked it up discarded it then it would not be in the appeals system.  Plaintiff states he a had list of the officers who picked up his mail, but the list was taken from his cell at some point when he left for medical care.  Id.  Plaintiff was not permitted to make photocopies of his appeals as they were not considered legal papers.  Plaintiff did have some copies, such as copies of appeals that were sent to the Office of Inspector General, though the appeals themselves do not concern the subject matter of this case.  Plaintiff's Exhibit 34.  These appeals were handwritten copies of the appeals that plaintiff often made himself.  RT at 100.  Plaintiff states he does not have handwritten copies of the relevant appeals because they were removed from his cell by unknown correctional officers.  RT at 101.

IV.  Motion to Dismiss

Legal Standard

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 740, n. 5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.[4]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.

The PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's

---

[4] That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84.

At the time relevant to this action, the State of California provided its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). In order to exhaust available administrative remedies within this system for non-staff misconduct claims, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR. Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38. A slightly different path is used to process staff misconduct complaints which is fully set forth in Brown v. Valoff, supra.

Failure to exhaust administrative remedies is an affirmative defense properly raised by a defendant in an unenumerated Fed. R. Civ. P. Rule 12(b) motion. Jones v. Bock, 549 U.S. 199, 216 (2007). If the court concludes the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003). Defendants bear the burden of raising and proving non-exhaustion. Id. at 1119. The court may resolve any disputed material facts on the exhaustion issue by looking beyond the pleadings in deciding a motion to dismiss for failure to exhaust. Id. at 1119-20. No presumption of truthfulness attaches to a plaintiff's assertions associated with the exhaustion requirement. See Ritza v. Int'l Longshoremen's and

Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).

Discussion

This case hinges on whether plaintiff submitted an appeal on or about July 13, 2008, that did not reach the appeals office, either by being lost, purposely discarded by a correctional officer, or perhaps intentionally or mistakenly not logged in.  It is clear from the evidence that plaintiff was frustrated by the appeals process as in the months following the incident he referenced it to his doctor and wrote several letters to various officials and agencies.  In September 2008, plaintiff submitted a second appeal that was most likely received by the appeals office on October 3, 2008, logged and screened out.  Plaintiff submitted a third appeal most likely in November 2008, that appears to have been received by the appeals office and logged, but was screened out and not processed to the next level.  Plaintiff states he submitted a fourth appeal about forty days later, probably either in December 2008, or January 2009, that does not seem to have been received by the appeals office.

What is troubling with plaintiff's argument and the evidence presented is that so many appeals were properly carried through the prison mail system, reached the appeals office and were logged.  Plaintiff filed 17 appeals in 2008 and 2009 that were properly logged.  Additionally, plaintiff sent so many letters regarding the inadequacy of the appeals system that were again properly processed by the prison mail system and reached the District Attorney, Office of Inspector General and the Office of Internal Affairs and contained the same subject matter as the appeal.  Thus it seems it is just the one July 13, 2008, appeal that was allegedly discarded by an unknown prison staff member and perhaps the December/January appeal as well.  The undersigned is reasonably suspicious about plaintiff's "dog ate my homework" excuse for the critical appeal at issue.  There is always the possibility of blaming facial non-exhaustion on the – mean (but unidentified) correctional officer – who blatantly and clairvoyantly discards the

\\\\\

\\\\\

appeal pertinent to this case. Of course, there is rarely an opportunity for defendants to be able to directly disprove this allegation.[5]

Part of the problem and perhaps confusion with this case arises from plaintiff providing different dates when he filed appeals regarding the incident. In the operative complaint (Doc. 30) and the opposition to the original motion to dismiss, which essentially just referred back to the complaint, plaintiff stated he filed appeals that were discarded on July 13, 2008, September 7, 2008, November 2, 2008, and January 4, 2009. Doc. 30 at 6-7; Doc. 40 at 1. In plaintiff's January 30, 2009, letter to the Office of Inspector General, he stated that he filed appeals for this incident on July 13, 2008, August 31, 2008, October 19, 2008, and December 7, 2008. Plaintiff's Exhibit 34 at 449. At the evidentiary hearing plaintiff testified that he submitted appeals approximately every 40 days after July 13, 2008, without providing any actual dates. The appeals office logged appeals from plaintiff on October 3, 2008, October 10, 2008, and November 26, 2008. Attempting to link when plaintiff filed appeals and when the office received the appeals, if they were even the same appeals, is not an exact science. Furthermore, as plaintiff's estimates are sometimes several weeks or a month apart, it makes it difficult for defendants to properly respond.

In addition, plaintiff has hand written copies of several appeals, but not the relevant appeals to this case. The relevant appeals were at some point allegedly taken out of plaintiff's cell by unknown prison staff, along with a piece of paper that identified the name of the correctional officer who picked up the original July 2008, appeal and may have discarded it, information that would be vital to this case. In the prior findings and recommendations the undersigned noted that plaintiff's late appeal filed in 2009 that was rejected as untimely, made no mention of his prior attempts to exhaust and his appeal that was allegedly discarded. Plaintiff

---

[5] Defendants can only do what they did here – present witnesses who take their administrative appeal processing job seriously and who describe how the system is supposed to work.

states that he attached a cover letter to the 2009 appeal that discussed his prior appeals, but that cover letter is not in the appeal record and plaintiff does not have a copy   At times plaintiff's arguments exceed the bounds of credibility.

However, the burden rests with defendants to prove non-exhaustion. With respect to the original motion to dismiss, the underlined noted the scarcity of evidence that accompanied the pleadings of both parties and that defendants had just barely met their burden in demonstrating failure to exhaust.[6] As plaintiff states he did submit a timely appeal that disappeared and was not logged, defendant must prove that plaintiff did not. Defendants must therefore somehow show that something did not happen, that is, the appeal reaching the appeals office and being logged into the system, never actually was prepared in the first place. This is a difficult task.

In the original motion to dismiss, defendants argued that the evidence demonstrated that plaintiff only filed one appeal, a year later in 2009, that was untimely. Plaintiff argued that he filed many appeals that were discarded by staff and not logged. The evidence now demonstrates that both parties were incorrect. Plaintiff did file other appeals most likely regarding the instant incident that were logged by the appeals office, but screened out and not processed to the next level. Thus, defendants were mistaken that no other appeals were filed and plaintiff was incorrect that all of his appeals were being maliciously discarded by staff. These other appeals filed by plaintiff were screened out, thus even if defendants had been aware of them, they were most likely not in compliance with the prison's procedural rules to have properly exhausted the claim. However, the filing of these appeals does strengthen plaintiff's argument that he was concerned about this incident and did timely appeal it. Though, there is still no definitive evidence, other than his own testimony that was not directly rebutted by defendants,

---

[6] The motion to dismiss (Doc. 30) contained no exhibits, instead relying on plaintiff's exhibits from the complaint and plaintiff's opposition (Doc. 40) essentially referred the undersigned to the operative complaint to oppose the motion.

whether plaintiff did or did not file an appeal on July 13, 2008. Looking at the evidence that plaintiff did file other appeals in the months following the incident tends to show and support plaintiff's argument that he did file an appeal in July.[7] Therefore, based on all the evidence presented and as the burden rests with defendants who have not sufficiently countered plaintiff's evidence, the undersigned finds that defendants have failed to meet their burden in demonstrating non-exhaustion. Enough resources have been spent in determining whether defendants can prove a negative.

Accordingly, IT IS HEREBY RECOMMENDED that the motion to dismiss for failure to exhaust administrative remedies (Doc. 39) be denied. The undersigned will issue an amended scheduling order if these findings and recommendations are adopted.[8]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are

\\\\\

\\\\\

\\\\\

\\\\\

---

[7] Reviewing plaintiff's entire appeal history it becomes evident that plaintiff files many appeals regarding his interaction with prison staff and actual or perceived animosity from staff. It is curious that all these other appeals were properly processed which weighs against plaintiff, but of course it also supports his argument that he would file an appeal for the underlying incident.

[8] This action has a complicated procedural history including many amended complaints filed after discovery commenced. Discovery was stayed pending resolution of the motion to dismiss. Doc. 63.

1. advised that failure to file objections within the specified time waives the right to appeal the
2. District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3. DATED: September 26, 2012

<u>/s/ Gregory G. Hollows</u><br>
UNITED STATES MAGISTRATE JUDGE

GGH: AB
hubb939.evi