1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARRYL HUBBARD,                              No.  2:09-cv-0939 TLN AC P

12                  Plaintiff,

13         v.                                     ORDER

14   C.D. HOUGLAND, et al.,

15                  Defendants.

16

17         Plaintiff, a former state prisoner proceeding pro se, has filed an action pursuant to 42 U.S.

18   § 1983.  Pending before the court is plaintiff's motion to compel discovery, which is fully briefed.

19   See ECF No. 123 (motion), ECF No. 125 (defendants' opposition), ECF No. 128 (plaintiff's

20   reply).

21                       ALLEGATIONS OF THE OPERATIVE COMPLAINT

22         This case proceeds on the Second Amended Complaint filed on September 23, 2009,

23   which alleges harassment and an assault by correctional staff at High Desert State Prison (HDSP).

24   ECF No. 30.[1]  Plaintiff alleges that in early March 2008, Correctional Sergeant Hougland stopped

25   him and grabbed the pill bag in which plaintiff kept his I.D. card and papers.  Papers fell to the

26   ground, and when plaintiff picked them up Sgt. Hougland grabbed them and threw them back on

27   ─────────────────────

28   [1] Plaintiff submitted several other proposed amended complaints, but leave to amend was denied.
     See ECF No. 65.

1   the ground.  Sgt. Hougland then went through plaintiff's pill bag and dropped the contents on the

2   ground, item by item.  After he handed plaintiff's I.D. card back to him, Sgt. Hougland told

3   plaintiff, "I'm done."  Plaintiff responded, "No you're not. Pick them up."  A female officer

4   picked up the papers and handed them to Sgt. Hougland, who shoved them at plaintiff saying,

5   "I'm going to get your fat ass."  Plaintiff then submitted a 602 staff complaint, which he

6   resubmitted an additional two times but which received no response.  SAC at 3-4.

7       The following week as plaintiff was being placed in a holding cage, defendant Hougland

8   told plaintiff, "The first chance I get, I'm going to kick your fat f[......] ass.  So write that up,

9   asshole."  Id. at 4.

10      On July 7, 2008, plaintiff left the medication line without his evening meds in order to

11  escape harassment by Sgt. Hougland and Correctional Officer McBride.  While walking away,

12  plaintiff expressed what he thought of the defendants.  Plaintiff alleges that defendant Hougland

13  attacked him and plaintiff lost consciousness.  When plaintiff regained consciousness he was on

14  the ground face down and defendant Hougland was on top of him, punching him on the head over

15  and over while yelling, "Stop resisting."  He then began kneeing plaintiff in the back.  Defendant

16  McBride began beating plaintiff on his right thigh with a baton and then began socking plaintiff's

17  back even after it snapped.  Id.

18                          RELEVANT PROCEDURAL HISTORY

19      This action was commenced in 2009.  Plaintiff propounded discovery requests, and

20  defendants obtained an extension of time to respond until after adjudication of their motion to

21  dismiss.  See ECF Nos. 44, 45.  Discovery was subsequently stayed, ECF No. 63, and the motion

22  to dismiss was later granted on grounds of administrative non-exhaustion.  See ECF Nos. 64

23  (Findings and Recommendations), 76 (Order adopting Findings and Recommendations).  Prior to

24  the district judge's adoption of the Findings and Recommendations, plaintiff filed motions to

25  compel discovery responses, ECF Nos. 74, 75, which were mooted by dismissal of the action.

26      Plaintiff appealed, and on March 7, 2012, the Ninth Circuit reversed and remanded for

27  further proceedings regarding exhaustion.  ECF No. 83.  The previously-imposed discovery stay

28  was lifted as to the issue of administrative exhaustion only.  ECF No. 90.  Following an

2

1   evidentiary hearing, the remanded motion to dismiss was denied. <u>See</u> ECF Nos. 107 (Findings

2   and Recommendations), 110 (Order adopting Findings and Recommendations).

3       Defendants filed an answer on February 14, 2013.  ECF No. 118.  A new scheduling order

4   issued on May 14, 2013, setting a discovery deadline of September 3, 2013.  ECF No. 120.  The

5   motion now before the court was timely filed before the close of the discovery period.

6                                PLAINTIFF'S MOTION TO COMPEL

7       I.       <u>Standards Governing Discovery</u>

8       The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be

9   obtained as to "any nonprivileged matter that is relevant to any party's claim or defense -

10  including the existence, description, nature, custody, condition and location of any documents or

11  other tangible things and the identity and location of persons who know of any discoverable

12  matter." <u>Id.</u>  Discovery may be sought of relevant information not admissible at trial "if the

13  discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

14  The court, however, may limit discovery if it is "unreasonably cumulative or duplicative," or can

15  be obtained from another source "that is more convenient, less burdensome, or less expensive"; or

16  if the party who seeks discovery "has had ample opportunity to obtain the information by

17  discovery"; or if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(C)(i), (ii)

18  and (iii).

19      Where a party fails to answer an interrogatory submitted under Fed. R. Civ. P. 33, or fails

20  to produce documents requested under Fed. R. Civ. P. 34, the party seeking discovery may move

21  for compelled disclosure.  Fed. R. Civ. P. 37.  The party seeking to compel discovery has the

22  burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  The

23  party opposing discovery then has the burden of showing that the discovery should be prohibited,

24  and the burden of clarifying, explaining or supporting its objections, <u>Bryant v. Ochoa</u>, 2009 WL

25  1390794 at * 1 (S.D. Cal. May 14, 2009), and are "required to carry a heavy burden of showing"

26  why discovery should be denied.  <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).

27      II.      <u>Overview of the Discovery Dispute</u>

28      Plaintiff moves for an order compelling responses (or further responses) to the following

3

discovery requests, to which defendants have objected:

- Interrogatories 1 through 15 directed to defendant Hougland;
- Interrogatories 5 through 15 directed to defendant McBride;
- Requests for Production of Documents 1 through 7 directed to defendant Hougland;
- Requests for Production of Documents 1 through 5 directed to defendant McBride.

Motion to Compel (MTC), ECF No. 123 at 15-54.

Most of the information that plaintiff seeks by these requests falls into one of two general categories.  First, plaintiff seeks information that may reveal the existence and identities of additional eyewitnesses to the alleged assault.  Second, plaintiff seeks information related to other uses of force by the defendants against inmates, and past altercations that each of them may have had with other inmates.  Plaintiff also seeks policies, procedures and training materials regarding methods for dealing with unruly inmates.

Although plaintiff identifies each set of the discovery requests at issue as the first such set, defendants characterize the interrogatories propounded upon defendant Hougland as well as the requests for production of documents directed to both defendants as the third such set and the interrogatories directed to defendant McBride as the second such set.  Defendants accordingly object to a number of the requests as duplicative of earlier requests.  However, the procedural history of the case shows that previously propounded discovery requests were effectively terminated by the discovery stay imposed in 2010, which was followed by dismissal of the action. Accordingly, plaintiff's motions to compel further responses to his initial discovery requests were never adjudicated.  It is not disputed that plaintiff timely and properly propounded his renewed (and any additional) discovery requests upon the defendants following remand.  Accordingly, all objections based on the duplicative nature of the requests are overruled.

III.     Discovery Related To Staffing

A.  Hougland Interrogatories No. 1 through No. 5

Plaintiff seeks an order compelling further responses to the following interrogatories propounded to defendant Sgt. Hougland:

INTERROGATORY  NO.1:    Identify  all  personnel  assigned  to

4

work in the program office at the time [of the incident].

INTERROGATORY NO. 2:   Identify all personnel assigned to work in B Clinic at the time [of the incident].

INTERROGATORY NO. 3:   Identify all personnel assigned to work on the program patio at the time [of the incident].

INTERROGATORY NO. 4:   Identify all radio units on B Yard at the time [of the incident].

INTERROGATORY NO. 5:   Identify the staff members in the control booth of housing units 1-5 (respectively).

To each of these interrogatories, defendant Hougland posits form objections to relevance and breadth,[2] and substantively represents that he has no responsive information.

Plaintiff links these interrogatories to his theory that defendants Hougland and McBride coordinated with all of these unidentified staff members to delay their response to a "'yelling, boisterous & ranting inmate' in an enormously 'agitated state' right in front of them all" and that the defendants deliberately orchestrated the disturbance for the sole purpose of harming plaintiff. ECF No. 123 at 1-2.  Plaintiff is not proceeding on a conspiracy claim or, despite his apparent wish otherwise (see ECF No. 128 at 13), on a claim of retaliation.  Plaintiff's claim involves alleged excessive force by the defendants.  Accordingly, defendant's relevance objection is well taken.

While the existence and identities of eyewitnesses are certainly discoverable, plaintiff already has the incident reports that identify known witnesses.  Defendant Hougland represents that he has no personal knowledge of the staffing assignments plaintiff seeks, and there is no reason to think that he should.  To the extent plaintiff seeks further responses to these interrogatories, the motion to compel is denied.

B. Hougland Interrogatory No. 6

Interrogatory No. 6 seeks specific information related to the incident report authored by defendant Hougland:

INTERROGATORY NO. 6:   Identify all staff members in your

---

[2] Defendant also objects to some of these interrogatories as duplicative of previous requests.  That objection is overruled for the reasons previously stated.

report, specifically "the unidentified staff member."

Defendant Hougland responded as follows:

> Defendant Hougland objects to this interrogatory as vague and ambiguous as to the report referenced in the request. Subject to and without waiving said objections, defendant Hougland states that with respect to the incident report dated July 7, 2008, he does not have information concerning the identity of the "unidentified staff" who handed Officer Sanders the leg restraints.

Sgt. Hougland's staff report dated July 7, 2008 identifies the incident as an "assault on a peace officer without a weapon resulting in use of force;" names himself a victim; lists four other staff members, including defendant McBride, as staff witnesses to the incident; and names plaintiff as the "suspect." Id. at 31.  In the report supplement defendant Hougland states that Officer Sanders "applied a set of leg restraints that were brought by unidentified staff." Id. at 32. Plaintiff argues that it is against CDCR policy not to identify all staff involved in an incident, and contends "that C/O Sanders was the first officer to arrive at the scene of the attack" and that defendant Hougland ordered her to leave plaintiff alone with him and to go get leg restraints from housing unit 5. ECF No. 123 at 4. Plaintiff insists that he has a right to know the identity of the nameless witness. The potential relevance of whether Officer Sanders retrieved the restraints herself or had them handed to her is far from clear, despite plaintiff's attempt at an explanation. However, it is clear that Sgt. Hougland responded under penalty of perjury that he does not know the identity of the individual who brought the leg restraints applied by Officer Sanders. The court cannot compel a further response to this interrogatory.

C.  Hougland Interrogatory No. 7

Plaintiff seeks a further response to the following interrogatory:

> INTERROGATORY NO. 7:   Describe in detail the duties of the staff assigned to the yard's observation tower.

Defendant Hougland responded as follows:

> Defendant Hougland objects to this interrogatory as overbroad. Subject to and without waiving said objection, defendant Hougland states that the staff assigned to the yard monitors all movement on the yard.  If the staff is directly involved in an incident, that staff will announce the incident.

6

1    Plaintiff explains that he asked this question to establish that the staff member assigned to

2    the yard's observation tower is the one who should have announced a disturbance but failed to do

3    so.  ECF No. 123 at 4.  Defendant Hougland argues that he responded in full in light of the broad

4    nature of the request.  ECF No. 125 at 4.  Plaintiff contends that the defendant is lying and that "it

5    is the duty of all radio units to announce an incident."  ECF No. 128 at 8.  Plaintiff may disagree

6    with the defendant's response and he may seek in the future to contest it with other evidence, but

7    the response is not inadequate.  No further response will be compelled.

8        D.  McBride Interrogatory No. 5

9    Plaintiff seeks an order compelling a further response to the following interrogatory

10   propounded to defendant Officer McBride:

11        INTERROGATORY NO. 5:  Describe in detail all duties associated
          with being assigned as Search & Escort Officer #2.
12

13   Defendant McBride responded as follows:

14        Defendant McBride objects to this interrogatory as calling for
          information that is confidential and not relevant to any party's
15        claims or defenses in this action on calculated to lead to the
          discovery of admissible evidence.  Subject to and without waiving
16        the foregoing objections, defendant McBride responds to this
          request by referring plaintiff to the duty statement for the position
17        of Search & Escort Officers, attached hereto as Exhibit 1.

18   Plaintiff does not demonstrate why the duty statement is an inadequate response to the

19   interrogatory.  The motion to compel is denied as to this discovery request.

20        IV.   Discovery Related To Past Misconduct And Prior Incidents Involving Force

21        A.  Hougland Interrogatories No. 8, No. 9 and Nos. 13-15

22   Defendant Hougland objected to the following interrogatories without providing any

23   substantive response:

24        INTERROGATORY NO. 8:   How many staff complaints have
          been filed against you[?]
25
          INTERROGATORY NO. 9:  Of those staff complaints filed against
26        you, how many have you been reprimanded for?

27        INTERROGATORY NO. 13:  In your career as a peace officer,
          how many law suits have you been name[d] as a defendant in[?]
28

7

1

2

    INTERROGATORY NO. 14:   Of those law suits identified in Interrogatory # 13, how many [] have been dismissed[?]

3

4

    INTERROGATORY NO. 15:   Of those law suits identified in Interrogatory # 14, explain why each one had been dismissed.  (For example: The 1st one was dismissed for failure to exhaust administrative remedies, the 2nd was dismissed . . .)

5

  In response to each of these questions, the same objection was raised:

6

7

8

    Defendant Hougland objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

9   Here, Hougland argues first that plaintiff is seeking inadmissible extrinsic evidence of

10 prior conduct.  <u>See</u> Fed. R. Evid. 608(b).  Evidence is not protected from discovery because it

11 would be inadmissible at trial.  Were this case to proceed to trial, plaintiff would be permitted to

12 attack Houghland's credibility and, in the court's discretion, to inquire on cross-examination

13 about any specific instances of past conduct that are relevant to truthfulness.  <u>See</u> Fed. R. Evid.

14 404(a)(3), 607, 608(b).  Plaintiff is not barred by the rules of evidence from developing potential

15 impeachment evidence in discovery.

16   Sgt. Hougland also contends that the information plaintiff seeks is confidential personnel

17 information protected by the official information privilege.  Federal law governs the existence

18 and scope of an asserted privilege in federal question cases.  <u>Kerr v. U.S. Dist. Court for N. Dist.</u>

19 <u>of California</u>, 511 F.2d 192, 197 (9th Cir. 1975), <u>aff'd</u>, 426 U.S. 394 (1976).[3]  "Federal common

20 law recognizes a qualified privilege for official information."  <u>Sanchez v. City of Santa Ana</u>, 936

21 F.2d 1027, 1033 (9th Cir. 1990) ("[g]overnment personnel files are considered official

22 information.").  "[I]t is important to emphasize that in a civil rights case brought under federal

23 statutes questions of privilege are resolved by federal law."  <u>Kelly v. City of San Jose</u>, 114 F.R.D.

24 653, 655 (N.D. Cal. 1987), <u>see also</u>, <u>id.</u> at 655-56 ("State privilege doctrine, whether derived from

25 statutes or court decisions, is not binding on federal courts in these kinds of cases.").

26   "To determine whether the information sought is privileged, courts must weigh the

27

28

[3] Defendants also cite the California Constitution and state statutes in asserting the confidentiality of police officer records and the privacy rights of third parties.  Only federal law applies here.

1   potential benefits of the disclosure against the potential disadvantages.  If the latter is greater, the

2   privilege bars discovery."  Sanchez, 936 F.2d at 1033-34; see also Martinez v. City of Stockton,

3   132 F.R.D. 677 (E.D.Cal. 1990).[4]  "The balancing approach of the Ninth Circuit is mirrored in

4   this and other courts' previous determinations that a balancing test is appropriate when the

5   disclosure of law enforcement files in a civil action is at issue."  Doubleday v. Ruh, 149 F.R.D.

6   601, 609 (E.D. Cal. 1993); cf. Crawford v. Dominic, 469 F. Supp. 260, 263 (E.D. Pa. 1979)

7   (finding "the importance of the information to the plaintiff's case" to be "the weightiest" of ten

8   factors to be considered in determining whether police files should be discovered in a civil rights

9   action).[5]

10      Here, the benefits of disclosure outweigh the disadvantages.  With the exception of Int.

11   Nos. 14 and 15,[6] the requested information has potentially great significance to plaintiff's case.

12   In an excessive force case such as this, the relevance and discoverability of officers' disciplinary

13   records, including unfounded complaints and allegations of misconduct, are widely recognized.

14   See, e.g., Gibbs v. City of New York, 243 F.R.D. 95 (S.D.N.Y. 2007); Frails v. City of New

15   York, 236 F.R.D. 116 (E.D.N.Y. 2006); Floren v. Whittongton, 217 F.R.D. 389 (S.D.W. Va.

16   2003); Hampton v. City of San Diego, 147 F.R.D. 227 (S.D. Cal. 1993).  Countervailing

17
18   [4] This case has been recognized as overruled only to the extent that it found that the law of the forum state, California, informed federal privilege law.  Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997).

19   [5] The ten factors include:"(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons
20   who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
21   (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either
22   pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings
23   have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery
24   or from other sources; and (10) the importance of the information sought to the plaintiff's case."
25   Crawford v. Dominic, 469 F. Supp. at 263) (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D.Pa.1973)).
26   [6] Plaintiff seeks information regarding the dismissal of lawsuits in order to attack the grievance system at HDSP, which he contends impairs the ability of inmates to administratively exhaust
27   claims.  Administrative exhaustion is no longer at issue in this case.  Accordingly, these
28   interrogatories do not seek information within the scope of Rule 26.

9

1    institutional and privacy considerations can be adequately addressed by narrowly tailoring the

2    compelled production, providing for redaction of documents, and issuing a protective order to

3    limit use of the materials.

4          Moreover, defendant has failed to satisfy the requirements for successful invocation of the

5    official information privilege.  A blanket assertion of privilege is, in any context, inadequate.

6    Mason, 869 F. Supp. at 834.  Defendant Hougland has not provided a privilege log or

7    "describe[d] the nature of the documents, communications, or tangible things not produced or

8    disclosed. . .  in a manner that, without revealing information itself privileged or protected, will

9    enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  Moreover, the official

10   information privilege must be formally claimed by "the head of the department which has control

11   over the matter, after actual personal consideration by that officer."  United States v. Reynolds,

12   345 U.S. 1, 7-8 (1953).[7]  Defendant has made no such showing to support invocation of the

13   privilege here.  Accordingly, the objection is overruled and defendant will be ordered to provide

14   responses to Int. Nos. 8, 9, and 13.  Responses shall be limited to the ten-year period preceding

15   the July 7, 2008 incident, and will be subject to a protective order.

16         B.  Hougland Interrogatories No. 10 Through No. 12

17         Plaintiff seeks further responses to the following interrogatories:

18

19         INTERROGATORY NO. 10: How many times have you been
     assaulted by a[n] inmate[?]

20         Response: Defendant Hougland objects to this interrogatory as
     calling for information that is not relevant to any party's claims or
21   defenses in this action or calculated to lead to the discovery of
     admissible evidence.  Subject to and without waiving the foregoing
22   objections, defendant Hougland states that he has been assaulted
     numerous times.

23   _____

24   [7] The claim should be made by a person in an executive policy position.  See Reynolds, 345 U.S.
     at 8 n. 20 ("The essential matter is that the decision to object should be taken by the minister who
25   is the political head of the department, and that he or she should have seen and considered the
     contents of the documents and himself have formed the view that on grounds of public interest
26   they ought not to be produced . . ." )  "[T]he information for which the privilege is claimed must
     be specified, with an explanation why it properly falls within the scope of the privilege."  In re
27   Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).  An official cannot invoke a privilege without
     personally considering the material for which the privilege is sought.  Yang v. Reno, 157 F.R.D.
28   625, 634 (M.D. Pa. 1994).

1

INTERROGATORY NO. 11:  How many staff assault reports had you written?

2

3

Response: Defendant Hougland objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, defendant Hougland states that he has written approximately two staff assault reports.

4

5

6

INTERROGATORY NO. 12: Of those staff assaults identified in Interrogatory # 11, how many inmates had filed an appeal[?]

7

8

Response: Defendant Hougland objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, defendant Hougland states that he does not have information or knowledge required to respond to this request.

9

10

11

12

Defendant opposes the motion to compel on grounds that the requested information is

13

inadmissible under Fed. R. Evid. 608(b) and protected by the official information privilege.

14

Those objections are overruled for the reasons stated above.

15

No further response will be required to Int. No. 10, which is overbroad.[8]  Defendant will

16

be ordered, however, to supplement his response to Int. No. 11 in order to clarify whether the two

17

specified assault reports include the report regarding plaintiff, and to identify the reports by date.

18

It is unclear to the undersigned whether there is a distinction between the "staff complaints"

19

sought in Int. No. 8 and the inmate appeals of assaults sought by Int. No. 12.  In case the

20

variations in wording arguably reflect different categories of documents, plaintiff is entitled to a

21

full response to No. 12 for the same reasons as No. 8.  Although Sgt. Hougland represents that he

22

has no personal knowledge necessary to respond to this request, he will be ordered to identify any

23

responsive documents in his personnel files.  Responses shall be limited to the ten-year period

24

preceding the July 7, 2008 incident, and will be subject to a protective order.

25

////

26

27

_____

[8] "Assault" can include spitting and other unwanted contact of a relatively minor nature.  Assaults serious enough to generate a report by staff are what matter, and are addressed by other discovery requests.

28

11

1      C.  <u>Related Hougland Requests For Production Of Documents</u>

2          Plaintiff seeks compelled production of documents responsive to his Requests for

3 Production numbered 4 through 7.  These RFPs seek documentation of matters identified in

4 response to Interrogatories 8, 11, 12 and 13.  Because the court will grant the motion to compel

5 further responses to the corresponding interrogatories for the reasons previously explained,

6 defendant will also be ordered to produce responsive documents subject to protective order.  For

7 the ten-year period preceding the July 7, 2008 incident at issue, defendant shall produce any and

8 all documentation to which he has access at HDSP or any other CDCR facility or located within

9 his own personnel file that relate to grievances/appeals/staff misconduct complaints filed against

10 him by inmates alleging excessive force or dishonesty.  He must provide documentation covering

11 the same period that identifies any and all lawsuits brought against him by a prisoner or prisoners

12 alleging excessive force or dishonesty.  To this extent only, plaintiff's motion as to RFP Nos. 4

13 through 7 is granted.

14      D.  <u>McBride Interrogatories</u>

15     Plaintiff seeks compelled responses to the following interrogatories:

16/17         INTERROGATORY NO. 6: How many staff misconduct complaints have been filed against you[?]

18         INTERROGATORY NO. 7:  Of those staff misconduct complaints filed against you, how many have you been reprimanded for[?]

19/20         INTERROGATORY NO. 11:  In your career as a peace officer, how many law suits have you been named as a defendant in[?]

21         INTERROGATORY NO. 12: Of those law suits identified in Interrogatory # 11 how many have been dismissed.

22/23/24         INTERROGATORY NO. 13:  Of those law suits identified in Interrogatory # 12 explain why each one has been dismissed (for example: the 1st one was dismissed for failure to exhaust administrative remedies, the 2nd one was dismissed [. . . ].

25     Defendant responded as follows to each of the preceding interrogatories:

26/27/28         Defendant McBride objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence.

12

These interrogatories mirror those directed to defendant Hougland, and court's analysis is the same. For the reasons explained above as to the Hougland discovery requests, the motion to compel will be granted as to McBride Int. Nos. 6, 7 and 11, and denied as to Nos. 12 and 13. Responses shall be limited to the ten-year period preceding the July 7, 2008 incident, and will be subject to a protective order.

Plaintiff also seeks further responses to the following interrogatories:

> INTERROGATORY NO. 8: How many times have you been assaulted by a[n] inmate[?]
>
> Response: Defendant McBride objects to this interrogatory as overly broad and unduly burdensome and calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, defendant McBride states that he has been assaulted numerous times during his career as a correctional officer.
>
> INTERROGATORY NO. 9: How many staff assault reports have you written?
>
> Response: Defendant McBride objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, defendant McBride states that he has not written any staff assault reports as there is no such report prepared or filed at the CDCR.
>
> INTERROGATORY NO. 10: Of those staff assaults identified in Interrogatory # 9, how many have filed an appeal[?]
>
> Response: Defendant McBride objects to this interrogatory as calling for information that is not relevant to any party's claims or defenses in this action or calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, defendant McBride refer[]s to his response to Request No. 9 above.

The court's review of the responses to Int. Nos. 8-10 leads to the conclusion that no further response to these questions, submitted under penalty of perjury, can be ordered.

E. Related McBride Requests For Production Of Documents

Plaintiff seeks compelled production of documents requested in McBride RFP Nos. 1 through 4, which correspond to McBride Int. Nos. 6, 9, 10, and 11. Because the motion is granted as to Int. No. 4, it is also granted in part as follows as to RFP No. 1 (staff misconduct complaints

13

1   filed against defendant McBride).  Because the motion is granted as to Int. No. 11, it is also

2   granted in part as follows as to RFP No. 4 (lawsuits in which McBride was named as a defendant

3   related to his actions as a peace officer).  Because the motion is denied as to Int. Nos. 9 and10, on

4   the basis that McBride has represented there are no responsive documents, it is also denied as to

5   RFP Nos. 2 and 3.

6        For the ten-year period preceding the July 7, 2008 incident at issue, defendant shall

7   produce any and all documentation to which he has access at HDSP or any other CDCR facility

8   or located within his own personnel file that relate to grievances/appeals/staff misconduct

9   complaints filed against him by inmates alleging excessive force or dishonesty.  He must provide

10  documentation covering the same period that identifies any and all lawsuits brought against him

11  by a prisoner or prisoners alleging excessive force or dishonesty.

12       V.    Discovery Related To Defendants McBride's History With Plaintif

13       Plaintiff seeks further response to the following interrogatory propounded on Officer

14  McBride:

15           INTERROGATORY NO. 14:  In your report identified in
             interrogatory # 3, you state ". . .next to an inmate I knew as
16           Hubbard . . . ."  Describe (in detail) your history with inmate
             Hubbard.

17           Response:  Defendant McBride objects to this interrogatory as
             vague and ambiguous.  Subject to any without waiving the
18           foregoing objections, and to the extent "history" means or refers to
             defendant McBride's familiarity with plaintiff, defendant McBride
19           states that his knowledge of Hubbard is based on his work
             experience where Hubbard was incarcerated.
20

21       In his argument on the motion, plaintiff asserts that "there was an extensive history

22  between the two of us, & that it was all bad for me."  ECF No. 123 at 10.  Plaintiff alleges

23  generally that both defendants harassed him for months with the cooperation of other HDSP

24  officials, and that others cooperated with them in ignoring plaintiff's appeals and falsifying

25  official reports.  Since plaintiff has personal knowledge of the information sought by this

26  interrogatory, the motion is denied as to this request.

27       On a related note, plaintiff seeks a response to the following:

28           INTERROGATORY NO. 15: In your past experiences with Inmate

                                   14

1  Hubbard, T-87937, had you, - or anyone you know of – ever
2  written, filed, or submitted a suppl[e]mentary report, concerning
   Inmate Hubbard[?]

3  Response:  Defendant McBride objects to this interrogatory as
   exceeding the number of interrogatories that may be served on a
4  party.

5

6  Defendant has submitted discovery responses documenting that he previously responded

7  to eleven interrogatories propounded by plaintiff in 2010.  ECF No. 125-3 at 2-11.  Because Rule

8  33(a)(1) limits a party to serving 25 interrogatories upon another party, absent leave of court,

9  defendant is correct that only 14 additional interrogatories were permissible without leave to

10 exceed the limit.  Plaintiff did not obtain leave of court to serve extra interrogatories, and so No.

11 15 of the set at issue here exceeded the limit.  Plaintiff's motion is accordingly denied as to this

12 request.

13 Finally, plaintiff seeks compelled production of documents requested in RFP No. 5, which

14 seeks any supplementary reports responsive to Int. No. 15.  Because the motion to compel is

15 denied as to Int. No. 15, it is also denied as to RFP 5.

16 VI.    Discovery Related To Policies and Training Materials

17 Plaintiff moves to compel production of the following documents from Defendant

18 Hougland:

19 RFP NO. 1:  All documentation that describe[s] training,
   procedures, policies, or rules, concerning how to approach an
20 emotionally upset, distraught, agitated, & or otherwise unruly
   inmate.

21
   Response: Defendant Hougland objects to this request on the basis
22 that it is overbroad and calls for the production of confidential
   information.

23
   *Supplemental Response:* Subject to and without waiving his prior
24 objections to this request, defendant Hougland respond[s] by
   producing the document attached hereto as Exhibit 1.

25
   RFP NO. 2: All documentation that describes training, procedures,
26 policies, or rules concerning how to retrain [sic] an emotionally
   upset, distraught, agitated, & or otherwise unruly inmate.

27
   Response: Defendant Hougland objects to this request on the basis
28 that it is overbroad and calls for the production of confidential

15

information.

*Supplemental Response*: Subject to and without waiving his prior objections to this request, defendant Hougland respond[s] by producing the document attached hereto as Exhibit 1.

RFP NO. 3: All documentation on policies, procedures, rules, & or regulations on how to file a proper CDC RVR & or CDC-837 incident report.

Response: Defendant Hougland objects to this request on the basis that it is overbroad and calls for confidential information.

Plaintiff contends that the objections set forth above "are meritless and fraudulent." ECF No. 123 at 7.  Defendant Hougland points out that he has supplemented his original response to RFP Nos. 1 and 2 by providing Title 15, Cal. Code of Regs. §§ 3268, 3268.1, even though these regulations are available in the prison law library.  These procedures speak to the guidelines for "use of force" and "reporting and investigating the use of force."  Also included is § 3268.2 governing the "use of restraints."  In his reply, plaintiff acknowledges the supplemented response for RFP Nos. 1 and 2 but argues they are "completely inadequate" because the defendant "knows exactly what it is that I am requesting."  ECF No. 128 at 13.  Plaintiff claims that Hougland "deliberately confronted an inmate on his own when there was no need to do so, which raises the question of '"why."'  It appears that plaintiff is identifying himself as an inmate who was "emotionally upset, distraught, agitated, & or otherwise unruly" at the time of the incident at issue.

Training materials and any institutional policies or procedures regarding the implementation of the use of force regulations are discoverable.  Defendant will be ordered to produce correctional staff training materials and CDCR or HDSP policies and/or procedures, if any, that supplement or implement the use of force regulations and/or address the tactics to be used when approaching or restraining an agitated or unruly inmate.  Defendant must disclose training materials that were in use, and policies or procedures that were in force, during the ten years prior to July 7, 2008.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants must submit a proposed protective order within seven (7) days with respect

16

1    to the discovery ordered below.

2         2.  Plaintiff's motion to compel further discovery responses (ECF No. 123) is granted in

3    part, to the extent specified above, as to the following discovery requests:

4              a.  Int. Nos. 8, 9, 11, 12 and 13 propounded upon defendant Hougland;

5              b.  RFP Nos. 1, 2, 3, 4, 5, 6 and 7 directed to defendant Hougland;

6              c.  Int. Nos. 6, 7, 11 propounded upon defendant McBride; and

7              d.  RFP Nos. 1 and 4 directed upon defendant McBride.

8         3.  The motion is denied in all other respects.

9         4.  Upon issuance of a protective order, the discovery responses and documentation herein

10   ordered must be provided to plaintiff within thirty days.

11   DATED: March 17, 2014

12                                        _____
                                          ALLISON CLAIRE
13                                        UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         17